Hillsboro Inlet Corporation v. Commissioner.
Hillsboro Inlet Corp. v. Commissioner
Docket No. 12318.
United States Tax Court
1947 Tax Ct. Memo LEXIS 165; 6 T.C.M. (CCH) 701; T.C.M. (RIA) 47171; June 25, 1947
*165 Hubert F. Teitman, Esq., and Charles H. Lindfors, C.P.A., 119 S.E. 1st Ave., Fort Lauderdale, Fla., for petitioner. Edward L. Potter, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: Respondent determined a deficiency in petitioner's income tax for the calendar year 1944 in the amount of $1,379.28. Respondent further imposed a penalty of $68.96, which amount represents five per cent of the deficiency. The question is whether petitioner is the proper taxable entity with respect to the income here involved. The return was filed with the collector of internal revenue for the district of Florida at Jacksonville. Findings of Fact Petitioner is a Florida corporation. It was organized by William L. Sweet and W. P. Tanner in 1928. Sweet and Tanner conveyed to petitioner in 1928 about 100 acres of land owned by them and located near Pompano, Florida. Petitioner issued 1,500 shares of its stock to each of these individuals. Some little time later 200 additional shares were issued to Charles Cory, who paid $4,000 therefor. These 200 shares were later acquired by Sweet's wife. There were no other stockholders. Sweet and Tanner were petitioner's *166 officers and directors. They received no salary. There were no other employees. Petitioner had no offices of its own but used its attorney's office for address purposes. No books were kept. A bank account was opened in petitioner's name in 1928. This account was virtually inactive between 1928 and 1944. The land conveyed to petitioner by Sweet and Tanner was subdivided. Suit was brought in petitioner's name to have the land returned to an acreage status to save local property taxes. After petitioner acquired the land in 1928 the property was maintained and looked after but not developed. Some sand was pumped, local taxes were paid and various other miscellaneous carrying charges were paid. These expenses were paid by Sweet and Tanner equally out of their own separate funds. There was a small real estate office on the property. Sweet improved and enlarged this at a cost to him of approximately $9,000 to $10,000. Sweet lived there with his family without paying rent. Tanner agreed to this arrangement and it was understood between Sweet and Tanner that Tanner, if he wished, could also build a house on the property and live there rent free. In 1936 petitioner was dissolved by proclamation *167 of the Governor of Florida for failure to pay its franchise tax. After such dissolution the property was managed as before. In 1944 petitioner was revived as a corporation by the payment of three years' back franchise taxes as provided by local law. Petitioner was thus revived on advice of counsel for the better passing of title to the property. The only stockholders' meeting was held in connection with this revival. In 1944 petitioner received $1,000 for an option to purchase the land. Petitioner deposited this amount in its bank account. The option was not exercised. Later in 1944 petitioner sold the property for $100,000 of which amount $25,000 was received in 1944 and deposited by petitioner in its bank account. Prior to this sale petitioner had never conveyed the property. When the property was sold an adjustment was agreed upon between Sweet and Tanner with respect to the improvement Sweet had placed on the property in the form of the remodeled real estate office. It was agreed that Sweet would be reimbursed to the extent of $10,000 for such improvements and Tanner would get $1,000 for whatever interest he might have had as a result of the agreement that both might live on *168 the property. During 1944 petitioner made distributions by check to its stockholders in an aggregate amount of $16,382.39, of which Tanner received $6,127.40, Sweet received $7,754.99 and Sweet's wife received $2,500. Petitioner, during 1944, also paid by check a total of $4,081.79 for taxes, fees and commissions. Petitioner presented for filing on March 28, 1945, corporation income and declared value excess-profits tax return, Form 1120, indicating that the gain on the sale of the property should be reported by its stockholders, Tanner, Sweet and Sweet's wife. Respondent, in asserting the deficiency against petitioner for 1944, stated: "It is held that gain realized in the taxable year 1944 from the sale of real estate and the forfeited deposit on an option in that year constituted income taxable to you." Opinion The question is whether petitioner is to be recognized as a taxable entity. We agree with respondent that petitioner should be so recognized. The general rule is that a corporation will be recognized for tax purposes. There are certain well known exceptions, such as situations wherein the corporate form is being used exclusively to minimize taxes or is otherwise *169 so utterly lacking in reality as to warrant non-recognition. The problem of determining when to make an exception to the general rule is always a difficult one. Prior to , the courts exhibited various degrees of willingness to make or not make exceptions to the general rule of corporate recognition. The Supreme Court in , reaffirmed the general rule under circumstances not unlike the present ones. Here there is no fraud, no tax evasion, no mischief. Petitioner was formed as a convenience to certain individuals in connection with real estate activities. Petitioner held title to the property. Legal proceedings were carried on in petitioner's name to restore the land to acreage. Petitioner was dissolved, it is true, in 1936 for failure to pay franchise taxes but was revived in 1944 again for the convenience of the individuals in carrying out their business plans. Petitioner, in 1944, received $1,000 for an option which was not exercised. Later in that year petitioner conveyed the land to others for $100,000, receiving $25,000 of the sales price at the time of the sale. Also during *170 1944 petitioner paid various expenses by checks and made distributions to its stockholders in proportion to their holdings. We think these activities and purposes are sufficient to accord petitioner an independent, separate identity for tax purposes. The facts that petitioner operated loosely without books and so on and that Sweet, for example, lived on the property without paying rent, seem insufficient under the circumstances to justify ignoring petitioner's identity. With the business conveniences of the corporate form go the tax consequences. The line is difficult to draw but we think our conclusion to recognize petitioner for tax purposes is justified by the present facts and is in accord with the reasoning of See also, . We hold therefore that respondent correctly attributed the income in question to petitioner. The question of the penalty remains. Petitioner has offered no evidence whatsoever on this issue and does not mention it on brief. We therefore sustain respondent in this respect. Decision will be entered for respondent.